UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DENZEL SAMONTA RIVERS,

                    Plaintiff,

v.                                                 Case No. 19-cv-842-pp

ROBERT AHLBORG, *et al.*,

                    Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2), SCREENING COMPLAINT UNDER 28 U.S.C. §1915A, DENYING AS MOOT PLAINTIFF'S MOTION FOR EXTENSION OF TIME TO PAY INITIAL PARTIAL FILING FEE (DKT. NO. 11), DENYING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER (DKT. NO. 13) DENYING PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT TO ADD DEFENDANTS (DKT. NO. 14), GRANTING IN PART AND DENYING IN PART PLAINTIFF'S SECOND MOTION FOR LEAVE TO FILE AMENDED COMPLAINT (DKT. NO. 17) AND DISMISSING DEFENDANTS**

Denzel Samonta Rivers, a Wisconsin state prisoner who is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants were deliberately indifferent to his serious medical needs in violation of federal and state law. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, screens his complaint, dkt. no. 1 and resolves several other motions he has filed.

I.    **Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was a prisoner when he filed his complaint. See 28 U.S.C. §1915(h).

1

The PLRA allows the court to give a prisoner plaintiff the ability to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the prisoner must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On June 7, 2019, the court ordered the plaintiff to pay an initial partial filing fee of $4.56. Dkt. No. 6. The court received that fee on July 26, 2019. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee. He must pay the remainder of the filing fee over time in the manner explained at the end of this order.

About two weeks after the court received the $4.56 initial partial filing fee on July 26, 2019, it received a motion from the plaintiff, asking the court to give him an extension of time to pay the partial filing fee or to allow him to pay the partial filing fee using his release account. Dkt. No. 11. Because the court already has received the partial filing fee, the court will deny this motion as moot.

**II.     Screening the Complaint (Dkt. No. 1); Motions for Leave to Amend (Dkt. Nos. 14, 17)**

   A.     Federal Screening Standard

Under the PLRA, the court must screen complaints brought by prisoners seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to

state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent

standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.  The Plaintiff's Allegations

The plaintiff sues Robert C. Ahlborg, a registered nurse at Waupun Correctional Institution; Mark Jenson, also a Waupun RN; and Chrystal Marchant, the Health Services Manager at Waupun.

The plaintiff alleges that on June 28, 2018, he asked a John Doe Sergeant (not a defendant) at Waupun if he could call Health Services because he believed that his right thumb was broken. Dkt. No. 1 at ¶1. The sergeant called in the plaintiff's issue to Health Services as a medical emergency, and Defendant Ahlborg arrived at the plaintiff's cell within an hour. Id. at ¶2. Ahlborg evaluated the plaintiff's thumb and asked if he could bend it. Id. at ¶4. When the plaintiff was unable to bend his thumb, Ahlborg told him to submit a health service request form if the pain worsened. Id. at ¶¶5-6. Ahlborg did not give the plaintiff any pain medication or further treatment. Id. at ¶7. The plaintiff submitted a request form for treatment of his thumb. Id. at ¶8.

On June 29, 2018, defendant Jenson returned the plaintiff's copy of the form, which noted that the plaintiff would be, or had been, seen at "Nursing sick call today." Id. at ¶9. But the plaintiff did not receive any treatment that day. Id. On July 3, 2018, the plaintiff submitted another health service request form to defendant Marchant and explained that his thumb was still swollen and in pain. Id. at ¶10. The plaintiff did not immediately hear from Marchant or receive treatment from her. Id. at ¶11. The Health Services Unit received the

4

Case 2:19-cv-00842-PP    Filed 06/02/20    Page 4 of 13    Document 20

form from the plaintiff on July 5, 2018. Id. at page 10 (Ex. C.). Jenson responded to the plaintiff's July 3 request and told the plaintiff he would be seen for treatment the next day, Friday, July 6, 2018. Id. at ¶12.[1]

On July 6, 2018, Ahlborg treated the plaintiff's injury to his right thumb. Id. at ¶13. Ahlborg gave the plaintiff "Medical ICE," wrapped his thumb in an Ace bandage, prescribed ibuprofen for pain and scheduled the plaintiff for an x-ray later that day. Id. at ¶14. On July 8, 2019, Health Services issued the plaintiff a spica splint for his thumb and instructions for its use. Id. at page 10. On July 9, 2018, Waupun cardiologist James Collins (not a defendant) reviewed the plaintiff's x-ray and diagnosed an acute fracture of his right thumb and swelling of the nearby soft tissue. Id. at ¶15. Later that day, Ahlborg came to the plaintiff's cell and gave him a copy of the x-ray. Id. at ¶16. On July 26, 2018, Marchant responded to the plaintiff's July 3 health service request form and wrote that she would follow up to determine why he was not evaluated sooner. Id. at ¶17.

The plaintiff has sued the defendants in their official and individual capacities. Dkt. No. 1 at page 13. He seeks monetary damages and an order of protection from the defendants, who still work at Waupun where the plaintiff is incarcerated. Id.

---

[1] The plaintiff alleges that Jenson responded to his form on Saturday, July 7, 2018, which is *after* the date he alleged received the treatment (Friday, July 6, 2018). Id., ¶12-13. The Health Service Request form attached to the complaint shows that the response was sent on either July 5 or 6, 2018. Id. at 10.

5

On October 4, 2019, the court received a motion to amend the complaint. Dkt. No. 14. The plaintiff asked the court to allow him to add as defendants corrections officers Shannon Patroville and J. Kroll. He says that these officers were "pass control" officers at Waupun during the time of the events described in the complaint; "pass control" officers issue passes to inmates so that the inmates can leave their assigned units. Id. The plaintiff says that "PASS CONTROL was aware of [his] injury but did not issue [him] a pass for medical assistance." Id. The court will not allow the plaintiff to add these defendants. He does not allege that he asked either of these individuals to issue him a pass, or when he made the request, or why they denied it. He does not even say that these two officers denied his request—he says only that "PASS CONTROL" was aware of his injury.

The court also notes that the plaintiff seeks to add defendants because he believes that if pass control knew of his injury, pass control had a duty to do something about it. But not everyone who knows about a prisoner's problem has a "free-floating obligation to put things to rights." Burks v. Raemisch, 555 F.3d 592, 595 (7th Cir. 2009). Unless the plaintiff alleges that he asked these two individuals to issue him a medical pass so that he could go to the HSU to have his thumb treated, and they refused, they had no obligation to do anything.

In December 2019, the court received another motion from the plaintiff, again asking to amend the complaint. Dkt. No. 17. He first indicated that defendant Chrystal Marchant's last name had changed to Meli, and asked the

6

court to make that correction. Id. He reminded the court that he'd asked to add defendants and specified the compensatory and punitive damages he wanted from those defendants. Id. The court will grant the portion of the motion that seeks to correct defendant Meli's last name. It will deny the remainder of the motion, because it will not allow the plaintiff to add defendants Patroville and Kroll.

    C.    Analysis

Because the defendants are state employees, the court construes the plaintiff's official-capacity claims as claims against the State of Wisconsin. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989). A state is not a "person" against whom the plaintiff may recover monetary damages under 42 U.S.C. §1983. Lapides v. Bd. of Regents of the Univ. Sys. of Ga., 535 U.S. 613, 617 (2002); Williams v. Wisconsin, 336 F.3d 576, 580 (7th Cir. 2003). The plaintiff, however, also seeks injunctive relief in the form of a protective order against the defendants. The Eleventh Amendment does not bar him from seeking injunctive relief under §1983 against the defendants in their official capacities. Will, 491 U.S. at 71 n.10 (quoting Kentucky v. Graham, 473 U.S. 159, 167 n. 14 (1985), and Ex Parte Young, 209 U.S. 123, 159-60 (1908)); Williams, 336 F.3d at 580-81.

The question is whether the plaintiff states a claim that any defendant has violated his constitutional rights. His claims that he was denied adequate medical care arise under the Eighth Amendment, which prohibits cruel and unusual punishment. See generally Wilson v. Seiter, 501 U.S. 294, 297 (1991).

To state a cognizable claim under the Eighth Amendment, the plaintiff must allege both that he had an objectively serious medical condition and that the prison official was deliberately indifferent to that condition. Perez, 792 F.3d at 776. A prison official shows deliberate indifference when he "realizes that a substantial risk of serious harm to a prisoner exists, but then disregards that risk." Id. (citing Farmer v. Brennan, 511 U.S. 825, 837 (1994)). Neither negligence nor medical malpractice amount to a constitutional violation. See Farmer, 511 U.S. at 835-36; Estelle v. Gamble, 429 U.S. 97, 106 (1976). But an official may demonstrate deliberate indifference if, despite knowing of a significant risk to an inmate's health or safety, he renders "blatantly inappropriate" medical treatment or delays the inmate's treatment for non-medical reasons. Perez, 792 F.3d at 777.

The plaintiff has not stated a claim against Ahlborg. The plaintiff's fractured thumb was an objectively serious medical issue. His allegations, however, do not demonstrate that Ahlborg acted with deliberate indifference to that condition. Ahlborg examined the plaintiff within an hour of the plaintiff's request to the sergeant for a Health Services visit and told the plaintiff to contact Health Services if the pain worsened. The plaintiff did not see Ahlborg again until his Health Services visit on July 6, but the plaintiff does not allege that *Ahlborg* was responsible for the delay between treatments. During the July 6 examination, Ahlborg treated the plaintiff's thumb with ice and wrapped it with an Ace bandage, administered ibuprofen and scheduled an x-ray for the same day. Ahlborg's treatment of the plaintiff on two separate occasions shows

8

that he did not disregard the plaintiff's injury. Ahlborg's initial assessment on June 28 may have been hasty, but even if it amounted to medical malpractice (and the court has no reason to believe that it did), malpractice does not amount to an Eighth Amendment violation. See Estelle, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.").

The plaintiff's allegations against Jenson are different. The plaintiff alleges that Jenson caused a delay in treatment for his thumb because Jenson returned the first request form with a notation that the plaintiff had been, or would be, treated that day, and that did not happen. Although Jenson immediately responded to the plaintiff's second request form, the plaintiff did not receive treatment until eight days after he submitted his initial, improperly denoted, form. During that period, the plaintiff alleges that he experienced significant pain from what he eventually learned was a fractured thumb.

A delay in treating non-life-threatening but nonetheless painful conditions may constitute a failure to address a serious medical need under some circumstances. See Grieveson v. Anderson, 538 F.3d 763, 779 (7th Cir. 2008) (reversing grant of summary judgment and concluding that jail guards could be liable for delaying treatment of detainee's broken nose for a day and a half); Edwards v. Snyder, 478 F.3d 827, 831 (7th Cir. 2007) (reversing dismissal of inmate's deliberate indifference claim that he was forced to wait two days for proper treatment for his dislocated and compound-fractured

9

finger). The court will allow the plaintiff to proceed on an Eighth Amendment claim against Jenson.

Finally, the plaintiff does not state a claim against Marchant/Meli. Marchant/Meli is a supervisor of the Health Services Unit. The plaintiff alleges that he submitted an HSU Form to Marchant/Meli which was dated July 3, and that Marchant/Meli did not give him any relief. But the plaintiff has not alleged that Marchant/Meli was a nurse or a doctor, nor has he alleged that she was responsible for the delay in treatment. In fact, he alleges that toward the end of the month of June, Marchant/Meli responded to his HSU request by telling him that she would find out why he wasn't evaluated sooner. It appears that the plaintiff has named Marchant/Meli only because she was the supervisor of the HSU. "There is no doctrine of 'supervisory lability' under § 1983." Rainey v. Samuels, 130 Fed. App'x 808, 811 (7th Cir. 2005). "[P]ublic employees are responsible for their own misdeeds but not for anyone else's." Burks, 555 F.3d at 596. To hold a supervisor liable under §1983, the plaintiff must show that the supervisor was personally involved in the constitutional deprivation—if it occurred at the supervisor's direction or with her knowledge or consent. Gentry v. Duckworth, 65 F.3d 555, 561 (7th Cir. 1995) (citations omitted). The plaintiff has not made such allegations against Marchant/Meli.

### III. Motion for Injunction for a Temporary Restraining Order (Dkt. No. 13)

Finally, the plaintiff filed a motion for a temporary restraining order against Ahlborg and Marchant/Meli. Dkt. No. 13. The plaintiff says that he felt unsafe because these two defendants failed to provide him medical care related

10

Case 2:19-cv-00842-PP   Filed 06/02/20   Page 10 of 13   Document 20

to his thumb. Id. He says that Marchant/Meli never responded to his request and that Ahlborg tried to explain to the plaintiff his "events in relation to this claim" which made the plaintiff uncomfortable. Id.

The court will deny this motion. The court has found that the plaintiff has not stated claims against Ahlborg or Marchant/Meli. To obtain a temporary restraining order, the plaintiff needed to show that without it, he would suffer irreparable harm, that legal remedies (money) were not sufficient to address his injury and that his claim had some likelihood of success on the merits. Eli Lilly and Co. v. Arla Foods, Inc., 893 F. 3d 375, 381 (7th Cir. 2018). The plaintiff cannot show a likelihood of success on the merits, given that he has not stated claims against Ahlborg and Marchant/Meli, nor has he alleged that he would suffer irreparable harm without a restraining order.

## IV. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **DENIES AS MOOT** the plaintiff's motion for an extension of time to pay the partial filing fee. Dkt. No. 11.

The court **DENIES** the plaintiff's motion for a temporary restraining order. Dkt. No. 13.

The court **DENIES** the plaintiff's motion for leave to file an amended complaint adding defendants. Dkt. No. 14.

The court **GRANTS IN PART AND DENIES IN PART** the plaintiff's second motion for leave to file an amended complaint. Dkt. No. 17.

11

The court **ORDERS** that the clerk's office shall change the docket to show that Chrystal Marchant's last name is Meli.

The court **DISMISSES** Robert C. Ahlborg and Chrystal Meli as defendants.

Under an informal service agreement between the Wisconsin Department of Justice and this court, a copy of the complaint and this order will be electronically transmitted to the Wisconsin Department of Justice for service on defendant Mark Jenson. Under the informal service agreement, the court **ORDERS** Jenson to file a responsive pleading to the complaint within 60 days.

The court **ORDERS** that the agency having custody of the plaintiff shall collect from his institution trust account the $345.44 balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency shall clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state, or federal institution, the transferring institution shall forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the officer in charge of the agency where the plaintiff is confined.

The court **ORDERS** that the parties must not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions.

The court **ORDERS** that plaintiffs who are inmates at Prisoner E-Filing Program institutions must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the matter.

The court advises the plaintiff that, if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. Failure to do so could result in orders or other information not being timely delivered, which could affect the legal rights of the parties.

Dated in Milwaukee, Wisconsin, this 2nd day of June, 2020.

BY THE COURT:

_____
HON. PAMELA PEPPER
**Chief United States District Judge**